## WILLOW FUNDING COMPANY, L.P. *v.* GRENCOM ASSOCIATES ET AL.
## (SC 15827)

Callahan, C. J., and Norcott, Katz, McDonald and Peters, Js.

Argued May 1—officially released September 1, 1998

*Richard L. Albrecht,* with whom was *Jonathan S. Bowman,* for the appellant (plaintiff).

*Matthew J. Forstadt,* with whom was *Allison Dundas* and, on the brief, *Robert W. Finke,* for the appellees (defendants).

*Ronald Cohen, Kevin S. Murphy* and *G. David Fensterheim,* filed a brief for the Connecticut Bankers Association and Real Estate Capital Recovery Association as amici curiae.

*Opinion*

PETERS, J. This appeal concerns the manner in which a successor mortgagee seeking to foreclose a mortgage originated by a failed lending institution can prove the amount of the borrower's indebtedness. In

the companion case, *New England Savings Bank* v. *Bedford Realty Corp.*, 246 Conn. 594, 717 A.2d 713 (1998), we concluded that such a mortgagee can establish a prima facie case with respect to valuation through the introduction of documents that qualify as business records under General Statutes § 52-180.[1] In the present case, the successor mortgagee sought to satisfy its burden by invocation of the law on party admissions as well as the business records rule. In light of the record at trial, we conclude that the successor mortgagee sustained its burden of proof because of the defendants' admissions, and, therefore, we reverse the contrary judgment of the trial court.

This case arises out of successive assignments of a mortgage debt. On June 13, 1988, the named defendant, Grencom Associates (Grencom), executed a note for $1,500,000, payable to Citytrust. The note was secured by a second mortgage on real estate in Greenwich. The defendants Arthur Collins and Arthur D. Emil became guarantors of Grencom's debt.[2] The defendants did not repay the loan when it matured on June 15, 1991. Shortly afterward, Citytrust failed, and the Federal Deposit

---

[1] General Statutes § 52-180 provides in relevant part: "Admissibility of business entries and photographic copies. (a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. . . ."

[2] Unless the context requires otherwise, we will refer to the defendants collectively.

Insurance Corporation (FDIC) became its receiver. The FDIC hired Consolidated Asset Recovery Corporation (Consolidated) to service the Grencom loan. The plaintiff, Willow Funding Company, L.P., purchased the loan under sealed bid as part of a pool of loans. Accordingly, on December 6, 1994, the FDIC endorsed the note and assigned the mortgage to the plaintiff.

On May 19, 1995, the plaintiff commenced this foreclosure action. It claimed that the unpaid balance on the note was $1,907,384.63, deriving that figure from the amount of the principal balance figure at the time of the FDIC takeover of Citytrust.[3] The defendants stipulated to the execution of the mortgage and the underlying note. They contested the accuracy of the plaintiff's calculations of their indebtedness in only one respect, namely the validity of the principal balance figure of their indebtedness at the time of the takeover. Concluding that the plaintiff had not proved the amount of the indebtedness, the trial court, at the end of the trial, rendered judgment for the defendants on August 5, 1997. The plaintiff appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book (1998 Rev.) § 65-1, formerly § 4023.

In this court, the plaintiff raises three claims in support of its contention that it had established the amount of the defendants' debt at the time of the FDIC takeover from Citytrust.[4] It argues that the trial court improperly: (1) disregarded the defendants' multiple admissions regarding the existence, amount and balance of the debt; (2) redacted a loan history card maintained by

---

[3] Jodi Brightbart, a vice president of the plaintiff, testified that she had calculated the defendants' debt at the time of trial, including interest and late charges, at a total figure of $1,907,384.63. Brightbart used as her initial principal balance a figure of $1,423,989.71.

[4] We address the issues in a different order from that in which they were briefed.

Consolidated to delete its statement of the balance of the debt at the time of the FDIC takeover, even though the card as a whole was admissible as a business record; and (3) concluded that the plaintiff had failed to prove its debt. We agree with the plaintiff's first claim, and, on that basis, we reverse the judgment of the trial court and remand the case for a new trial.

I

We begin with an assessment of the role of party admissions as evidence of that party's indebtedness. Contrary to the ruling of the trial court, we conclude that the defendants' admissions in this case provided sufficient evidence of the amount of their debt at the time of the FDIC takeover of Citytrust, as that debt was recorded on the Consolidated loan history card that was introduced into evidence by the plaintiff.

At trial, to support its reliance on the base figure of $1,423,989.71 as the amount of the defendants' debt at the time of the FDIC takeover, the plaintiff elicited significant admissions derived from the defendant Grencom's books and records. These documents included Grencom's balance sheets and federal income tax returns for a number of years. These documents uniformly indicated the same principal balance amount for the Grencom loan that was recorded on the Consolidated loan history card.[5]

In its memorandum of decision, the trial court acknowledged that "[t]hese documents of the defendants carried as the principal balance a figure the same as the opening balance carried on the books of [Consolidated]." The court recognized that the defendants' documents constituted admissions. Nevertheless, the court concluded that the figure recited in these documents

---

[5] Some of the records round the principal balance amount to the nearest dollar.

had little probative value, because it was based on City-trust's records, which Grencom had not verified through an independent audit. The court found, therefore, that the plaintiff had failed to prove the amount of the debt by a preponderance of the evidence.

In this appeal, the question is not the admissibility of the documents, which the court impliedly acknowledged, but the propriety of the court's finding that the documents had insufficient probative value to sustain the plaintiff's burden of proving the amount of the defendants' indebtedness. Our standard of review is whether the court's finding was clearly erroneous. Practice Book § 60-5, formerly § 4061;[6] see *Barbara Weisman, Trustee* v. *Kaspar*, 233 Conn. 531, 541, 661 A.2d 530 (1995) ("[a] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed" [internal quotation marks omitted]). We conclude that the trial court's finding cannot be sustained in light of the applicable law and the factual record in this case.

In analyzing the trial court's decision, we begin with the fundamental principles governing the admissions of a party opponent. "The words and acts of a party-opponent are generally admissible against him [or her] under the admission exception." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.5.1, p. 330. A statement is admissible as an admission even if it: (1) is conclusory; (2) contains a legal or factual conclusion beyond the competence of the person who made the admission; or (3) is not based on personal knowledge. Id., § 11.5.2, p. 332; see *Dreier* v. *Upjohn Co.*, 196 Conn.

---

[6] Practice Book § 60-5, formerly § 4061, provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law. . . ."

242, 248–49, 492 A.2d 164 (1985). In particular, "[t]he defendant's corporate ledger sheets acknowledging indebtedness are admissible as admissions by a party opponent whether or not they qualify under the business entry exception to the hearsay rule." *Ferris* v. *Polycast Technology Corp.*, 180 Conn. 199, 204, 429 A.2d 850 (1980) (admitting letter written by defendant's attorney and defendant's ledger books to substantiate plaintiff's claim regarding amount of indebtedness).

Because the probative value of an admission depends on the surrounding circumstances, it raises a question for the trier of fact. C. Tait & J. LaPlante, supra, § 11.5.2, p. 332; see *Toffolon* v. *Avon*, 173 Conn. 525, 536–37, 378 A.2d 580 (1977). "An evidential admission is subject to explanation by the party making it so that the trier may properly evaluate it." *Remkiewicz* v. *Remkiewicz*, 180 Conn. 114, 118–19, 429 A.2d 833 (1980); see *Kucza* v. *Stone*, 155 Conn. 194, 198, 230 A.2d 559 (1967). Although the declarant's lack of personal knowledge does not affect its admissibility, it is relevant to the weight to be given the admission. *Dreier* v. *Upjohn Co.*, supra, 196 Conn. 248–49.

At trial, the plaintiff introduced substantial evidence of party admissions by the defendants. The plaintiff called George Peter Henderson, a certified public accountant for Grencom, and, through him, introduced certain of the Grencom's books and records. Those documents included Grencom's balance sheets for 1993, 1994, 1995 and 1996, and Grencom's federal income tax returns for 1993, 1994 and 1995. The principal balance amount of $1,423,989.71[7] that was shown by these documents was the same amount as that recorded on the Consolidated loan history card for the Grencom loan indebtedness at the time of the FDIC takeover.

---

[7] See footnote 5 of this opinion.

Henderson testified that, although he had not audited this debt figure, he had used it repeatedly in the course of Grencom's business. He had used this debt figure in preparing Grencom's balance sheet for four years. In addition, for three years, he had used the same figure in preparing Grencom's federal income tax return, under penalty of perjury. He also testified that the information contained in these tax returns was truthful and accurate in accordance with his responsibility as a tax preparer. Both Henderson and a Grencom general partner had signed each return. Henderson also had sent K-1 tax statements with the same debt figure to the partners. Finally, in 1993, 1994 and 1995, he had requested extensions for filing, stating as the reason that he needed "additional information . . . to complete and file an accurate return."

In short, over a period of years, the defendants consistently and repeatedly had relied on this debt figure for their own commercial purposes and had sworn to its accuracy in documents submitted to the federal government. Their conduct demonstrates that they themselves had deemed the figure to have unquestioned probative value. The trial court improperly assigned dispositive weight to their contrary assertion at trial.

At trial, the defendants did not otherwise refute this debt figure, but left the plaintiff to its proof. We have rejected the defendants' claim that, because the defendants did not verify these figures independently, they are devoid of probative value. The defendants made no other challenge to the accuracy of these numbers. In fact, one of the Grencom partners, Collins, testified that he and his partner had signed for the loan, received the money and never paid it back. He further testified, in accord with Henderson, that, as far as he knew, the principal mortgage balance recorded in the Grencom books was accurate.[8]

---

[8] Having resolved this question on the basis of the admissions explicitly rejected in the trial court's memorandum of decision, we do not consider

In light of these uncontroverted facts, we conclude that the trial court was required to conclude that the defendants' admissions sufficed to satisfy the plaintiff's burden of proof with respect to the defendants' indebtedness. Ordinarily the trial court has discretion to reject even uncontested evidence, on the theory that the fact finder is uniquely well situated to make determinations of witness credibility. See, e.g., *Mather* v. *Griffin Hospital*, 207 Conn. 125, 145, 540 A.2d 666 (1988) ("[t]he jury is under no obligation to credit the evidence proffered by any witnesses, including experts . . . even if that evidence is uncontroverted" [citations omitted]); *Bieluch* v. *Bieluch*, 199 Conn. 550, 555, 509 A.2d 8 (1986) ("[t]he trial court is not bound by the uncontradicted testimony of any witness"); see also C. Tait & J. LaPlante, supra, § 3.1, pp. 36–37. This appeal presents an exception to that general rule, in part because the evidence was uncontroverted and overwhelming, and also because the evidence was entirely documentary rather than testimonial. Under these circumstances, the trial court was not free to disregard undisputed, probative evidence.

We conclude that the trial court's finding that these admissions lacked probative value was clearly erroneous. Practice Book § 60-5, formerly § 4061; see *Hall v. Planning Commission*, 181 Conn. 442, 445, 435 A.2d 975 (1980). Accordingly, we reverse the judgment of the trial court.

## II

The plaintiff argues, alternatively, as it had argued at trial, that the amount of the defendants' indebtedness

---

the possible weight of additional claimed admissions that the plaintiff contends the trial court "ignored." These controverted exhibits are, namely, Collins' acknowledgment of the debt figure in a letter from Collins to his business associate William Stern, and Stern's deposition testimony regarding Collins' admission. Similarly, we do not address the defendants' counterargument that the plaintiff failed to preserve its claim at trial.

also was established by a Consolidated loan history card that stated that $1,423,989.71 was the amount of the beginning principal balance of the Grencom loan at the time that the FDIC took over Citytrust. During the trial, the trial court redacted this amount from the Consolidated card, which the court deemed otherwise to be admissible. It concluded that, even under the business records rule contained in § 52-180, the amount of the indebtedness was inadmissible hearsay in the absence of a Citytrust record or a Citytrust witness who could attest to the reliability and accuracy of Citytrust records. The plaintiff claims that the trial court's redaction of the Consolidated loan history card was improper.

In the companion case to this appeal, we addressed the role that the business records exception to the hearsay rule plays in the proof of the amount of the current indebtedness of a loan originated by a failed lending institution. *New England Savings Bank* v. *Bedford Realty Corp.*, supra, 246 Conn. 606–609. In that case, the issue was the admissibility of the mortgage records of the originating lending institution. In the present case, the issue is the admissibility of the records of an assignee of the mortgage.

In light of our conclusion, in part I of this opinion, that the defendants' admissions provided sufficient evidence that $1,423,989.71 was the amount of the defendants' indebtedness at the time of the FDIC's acquisition of the mortgage, we decline to resolve this issue at this time. We express no opinion regarding either the applicability of the business records rule in general or the sufficiency, under that rule or other applicable rules of evidence, of the testimony of the witnesses who laid the foundation for the admission of the loan history card.[9]

---

[9] The plaintiff first introduced the loan history card through David Struss, who had been an attorney for Consolidated during the period that the loan

## III

On the basis of parts I and II of this opinion, we conclude that a new trial is required before a final judgment can be rendered.[10] Because of its ruling that the plaintiff had presented no persuasive evidence on the amount of the defendants' debt, the trial court did not address the merits of the defendants' counterclaim or of their special and affirmative defenses. It is hornbook law that this court does not consider the merits of such claims ab initio. See C. Tait & J. LaPlante, supra, § 3.1, pp. 36–37. They must be resolved in further trial court proceedings.

The judgment is reversed and the case is remanded for a new trial.

In this opinion CALLAHAN, C. J., and NORCOTT and KATZ, Js., concurred.

MCDONALD, J., concurring. I agree with the result.

---

was in the Consolidated portfolio. Joanne Haines testified regarding the starting principal balance on that card. Haines testified that she had worked for Citytrust for fifteen years. Beginning in 1991, Consolidated employed her to be a group manager in charge of a $400 million portfolio of loans. Haines explained that when the FDIC took over Citytrust, Consolidated was hired to service the loans. A Consolidated team balanced the Citytrust loans, transferred them into the Consolidated computer, and, finally, conducted a second balancing to ensure the accuracy of the computer data.

[10] In light of our resolution of parts I and II of this opinion, we do not reach the plaintiff's final claim, namely, that the burden of proving the amount of the debt shifted to the defendant pursuant to General Statutes § 42a-3-308 (b). In large part, the plaintiff offered this argument as a reason for overturning the judgment of the trial court in the event that this court disagreed with the plaintiff's claim that it had established the amount of the indebtedness on the other two grounds it had presented on appeal. Having ruled in the plaintiff's favor on its first ground for appeal, we decline to consider the propriety of its invocation of the Uniform Commercial Code.