[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Fondachelli, Inc./Sfizio Ristorante, filed this tax appeal pursuant to General Statutes §§ 12-117a and 12-119 covering the years 1993 to 1999, regarding the assessment by the city of Bridgeport on personal property that the plaintiff owns at a restaurant located at 746 Madison Avenue in Bridgeport.
The court conducted a trial in this matter on January 31, 2002 and March 12, 2002. From the evidence and exhibits presented, the court makes the following findings of fact, de novo. Union Carbide Corp. v. City ofDanbury, 257 Conn. 865, 870 (2001).
 1. The plaintiff bought the existing restaurant located at 746 Madison Avenue in Bridgeport in 1993 for $60,000.
 2. The tax assessor relied upon personal property declarations by the plaintiff in setting the valuation of the personal property for the years 1993-1995. The total figures were $3750 in 1993, $3400 in 1994 and $3390 in 1995.
 3. In 1996, the city hired a company, CFA, to review personal property declarations for the years 1993-1995. (Plaintiff's Exhibits W, X.)
 4. The plaintiff submitted materials to CFA as part of its review, including income tax returns for 1993-1995. (Defendant's Exhibit 2.)
 5. CFA found that the plaintiff had taken a depreciation deduction from its federal income tax each year from 1993 through 1995 which indicated that the personalty of the restaurant had a value of CT Page 11113 $45,000. (Defendant's Exhibit 10.)
 6. Based upon this information, the assessor recalculated the value of the plaintiffs personalty for the years 1993 to 1995 and used the $45,000 figure for the years 1996 to 1999.
The recalculations were as follows:
 1993: $3750 to $36,644 1994: $3400 to $34,828 1995: $3390 to $30,834 1996: $2378 to $29,968 1997: $2074 to $31,636 1998: $1771 to $21,459 1999: $17,645
(Plaintiffs Exhibits O-R; Plaintiff's brief, p. 8.)
7. The plaintiff introduced testimony of an expert in the area of restaurant evaluation. He testified that the plaintiffs personal property at the restaurant held the following values:
 1993 — $15,700 1994 — $13,185 1995 — $10,745 1996 — $9580 1997 — $8015 1998 — $6300 1999 — $4855
(Plaintiff's Exhibit A, Summary, p. 1.)
 8. The plaintiffs appraiser claimed to calculate the fair market value of the restaurant equipment based on what he believed like pieces of equipment would sell for in the used equipment marketplace in an "arms length transaction." The appraiser pointed out that, generally, restaurant equipment only has a life expectancy of five years and beyond that point the equipment is not very marketable or valuable. In this case, many of the items were of an age where they effectively had little or no value, several were no longer in line with the health code which made them unmarketable, several items were not working at all, CT Page 11114 and most were in poor condition. Lastly, the appraiser noted that the value of the personal property was also affected by difficulties in disassembling and moving equipment and the lack of demand in the market.
 9. On cross examination by the city's attorney, the plaintiffs appraiser admitted that his values were closer to distress sale values than fair market values. (Transcript, January 31, 2002, p. 68.)
 10. The plaintiff has met its burden of proof in showing that it timely appealed from the reassessment to the board of tax review in 1997.
 11. The city does not usually undertake an independent investigation of the personal property claimed by businesses, but relies on the taxpayer's declaration.
 12. The plaintiffs accountant testified that the $45,000 figure for the personal property, taken from the IRS form, was used to capture the original cost of the property and not give a current valuation.
The plaintiff first claims that it is entitled to relief under §12-119, on the ground that the 1996 reassessment and those that followed were illegal. The plaintiff contends that the city's use of the information obtained from CFA was unjustified and led to an invalid audit. A claim under this section requires a plaintiff to prove that the assessment was "(a) manifestly excessive and (b) . . . could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of the property." (Emphasis in original.)Second Stone Ridge Cooperative Corporation v. Bridgeport, 220 Conn. 335,341 (1991), quoting E. Ingraham Co. v. Bristol, 146 Conn. 403, 409, cert. denied, 361 U.S. 929, 80 S.Ct. 367, 4 L.Ed.2d 352 (1959). "Cases in this category must contain allegations beyond the mere claim that the assessor overvalued the property. [The] plaintiff . . . must satisfy the trier that [a] far more exacting test has been met: either there was misfeasance or nonfeasance by the taxing authorities, or the assessment was arbitrary or so excessive or discriminatory as in itself to show a disregard of duty on their part." (Internal quotation marks omitted.)Second Stone Ridge Cooperative Corporation v. Bridgeport, supra,220 Conn. 341, quoting Mead v. Greenwich, 131 Conn. 273, 275 (1944). See also Pauker v. Roig, 232 Conn. 335 (1995).
The plaintiff relies upon two cases where assessors contracted with CT Page 11115 third parties on a contingent fee basis to increase outstanding assessments and where the courts found violations of § 12-119. These cases may be distinguished, however. In the first case, HubbellIncorporated v. City of Bridgeport, Superior Court, judicial district of Fairfield, Docket No. 304607 (January 26, 1996, Levin, J.) (16 Conn.L.Rptr. 85), aff'd, 240 Conn. 475 (1997), also involving CFA, the plaintiff proved that the assessor lacked statutory authority to make a reassessment and wholly relied upon CFA's "distorted" methodology in conducting the reassessment. In the second case,Yankee Gas Co. v. Meriden, Superior Court, judicial district of Tolland, Docket No. X07 CV 96 007256S (April 20, 2001, Bishop, J.) (29 Conn.L.Rptr. 285), the reassessment was entirely based upon the calculations set forth in a study conducted by the third party company.
The assessor here obtained data that the plaintiff had supplied to CFA and made his own analysis to arrive at new values for the plaintiffs personalty. He made calculations based upon an amount declared by the plaintiff on its federal tax return when setting forth a value for the very personalty at issue in this case. The plaintiff has failed to show the "more exacting" proof required in an action under § 12-119.
The assessor has the right to reassess property when the accuracy of the assessment list arises. 84 Century Ltd. Partnership v. Board of TaxReview, 207 Conn. 250, 268 (1988); United Illuminating Company v. NewHaven, 240 Conn. 422, 456-57 (1997). He has wide discretion in the methodology employed to make a reassessment. "[P]roper deference must be given to the judgment and experience of assessors. In reviewing valuations, `we must bear in mind that the process of estimating the value of property for taxation is, at best, one of approximation and judgment, and that there is a margin for a difference of opinion.'"Connecticut Coke Co. v. New Haven, 169 Conn. 663, 668 (1975), quotingBurritt Mutual Savings Bank v. New Britain, 146 Conn. 669, 675 (1959). Under these circumstances, the court concludes that the plaintiff may not prevail under § 12-119.
Turning to the plaintiffs claim under § 12-117a, the court's duty is to determine "whether the plaintiff has been aggrieved by the action of the board of tax review and, if so found, it then proceeds to exercise a broad discretionary power to grant relief . . . If a taxpayer is found to be aggrieved by the decision of the board of tax review, the court tries the matter de novo and the ultimate question is the assessment of the true and actual value of the applicant's property." (Citations omitted.)O'Brien v. Board of Tax Review, 169 Conn. 129, 131 (1975); see also XeroxCorp. v. Board of Tax Review, 240 Conn. 192, 204 (1997). CT Page 11116
Here, based on the facts as found above, the plaintiff has proved that it was overtaxed and aggrievement is found. Thus, the sole question before the court is the "true and actual" value of the plaintiffs personal property. Thus the court does not consider in reaching its result any alleged mistakes made by the assessor in arriving at the valuation placed on the property. The valuation placed on the property by the plaintiffs accountant in completing plaintiffs federal tax return is an evidentiary factor in arriving at value, but is not controlling. WillowFunding Co. v. Grencom Assoc., 246 Conn. 615, 620-21 (1998); Tianti v.William Raveis Real Estate, Inc., 231 Conn. 690, 695 (1995). The words and acts of a party are generally admissible against him and the probative value of an admission depends upon the surrounding circumstances. Willow Funding Co. v. Grencom Assoc., supra, 246 Conn. 620. Although the declarant's lack of personal knowledge does not affect the admissibility of the declaration, it is relevant to the weight to be given to the admission. Id., 621.
In the instant case there are three opinions as to the value of the personal property located at the restaurant: the plaintiffs personal property declarations detailed in the court's findings of fact; the statement of $45,000 by the plaintiffs accountant on the plaintiffs federal tax return for the years 1993 through 1995; and the expert restaurant appraiser's analysis detailed in the court's findings of fact. The plaintiffs accountant testified that the $45,000 figure was listed on the plaintiffs federal tax return as the "new value" of the equipment in question for purposes of depreciation. The plaintiffs expert appraiser, on the other hand, determined the current value of the same equipment and then retroactively determined the previous value of the equipment for the prior years in question.
The plaintiff has introduced the report of an expert setting the value of the personal property. The expert's figures have the greatest weight with the court, although these figures should be adjusted upward by ten percent. Because the court concludes that the expert's valuation is closer to the distressed value than to the fair market value, this ten percent adjustment is proper.
Based on this analysis, the court concludes that the fair market value of the personal property is as follows: CT Page 11117
 1993 — $17,270 1994 — $14,503.50 1995 — $11,819.50 1996 — $10,538 1997 — $8816.50 1998 — $6930 1999 — $5340.50
The plaintiff is entitled to a refund of any overpayment made based on the amounts set by the assessor. Judgment shall enter for the plaintiff with interest and costs.
Henry S. Cohn, Judge CT Page 11118