NATIONWIDE MUTUAL INSURANCE COMPANY *v.*
JAMES ALLEN ET AL.
(AC 24190)
(AC 24191)

Lavery, C. J., and Bishop and Peters, Js.

Argued February 19—officially released June 29, 2004

*Neil Johnson*, with whom was *Heather K. Porto*, for the appellants (defendants).

*Kristen Schultze Greene*, for the appellee (plaintiff).

*Opinion*

LAVERY, C. J. The defendants, James Allen, doing business as Allen Landscaping, and William Shaw, appeal from the declaratory judgment rendered by the trial court in favor of the plaintiff, Nationwide Mutual

Insurance Company. The defendants claim on appeal that the court improperly concluded that the plaintiff was not obligated to defend or to indemnify Allen in a lawsuit initiated against him by Shaw. The plaintiff, having issued to Allen a commercial general liability insurance coverage policy that specifically excluded from coverage Allen's employees, sought a declaratory judgment to determine whether it had the duty to defend or to indemnify Allen in the underlying negligence action brought against Allen by Shaw. The court concluded that the plaintiff did not have a duty to defend or to indemnify Allen because Shaw was an employee and not an independent contractor or a temporary worker.[1] We affirm the judgment of the trial court.

The court's memorandum of decision describes the underlying facts, which are undisputed. Allen is a sole proprietor doing business as Allen Landscaping, which, for a fee, provides landscaping services to customers. Shaw performed landscaping work for Allen in exchange for pay. The plaintiff provided commercial general liability coverage to Allen for a policy period of June 1, 1998, to June 1, 1999. Allen's policy excluded coverage for bodily injury to his employees arising out of and in the course of their employment with Allen or performing duties related to the conduct of Allen's business. Shaw was injured in an accident that occurred on May 25, 1999, while he operated a commercial riding mower that had been purchased by Allen. On June 16, 1999, Shaw filed a claim for workers' compensation benefits for his injuries. In a notice of claim signed by Shaw's attorney, those injuries were described as having arisen from an accident that occurred in the course of Shaw's employment by Allen.

---

[1] We note that in the insurance policy issued to Allen by the plaintiff, § I (2) (d) specifically excluded from coverage "[a]ny obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law."

On November 18, 1999, Shaw initiated a negligence action against Allen, alleging that the injuries sustained while operating Allen's commercial riding mower were due to Allen's negligence.[2] In connection with that underlying action, the plaintiff brought a declaratory judgment action, which forms the basis of the present appeal, seeking a determination as to the extent of its obligation to defend or to indemnify Allen. Shaw seeks to have the plaintiff defend Allen and pay any damages awarded to Shaw in the underlying action. The plaintiff was defending the underlying tort action under a reservation of rights at the time it commenced this declaratory judgment action. The plaintiff filed a motion for summary judgment in this declaratory judgment action. The court denied the plaintiff's motion, finding that there was a genuine issue of material fact as to whether the "employer" retained the right to control not merely the result, but the means and methods used by the worker to obtain the desired result. After a trial, the court rendered a declaratory judgment in favor of the plaintiff, determining that the plaintiff was not obligated to defend or to indemnify Allen in the underlying tort action. The defendants now appeal.

The defendants claim that the court improperly rendered the plaintiff's declaratory judgment. In support of their claim, the defendants argue that the court lacked subject matter jurisdiction to determine whether Shaw was Allen's employee while that same question was simultaneously before the workers' compensation commissioner, that the court improperly determined that Shaw was an employee and not an independent contractor, that the court improperly determined that Shaw was not a temporary worker within the meaning of the insurance contract, and that the court improperly determined that a statement in the workers' compensa-

[2] See *Shaw* v. *Allen*, Superior Court, judicial district of Middlesex, Docket No. 90717 (November 18, 1999).

tion claim filed by Shaw, in which Shaw alleged that he was Allen's employee, was an admission. We disagree and address each argument in turn.

We observe that Practice Book § 17-54 provides that a court may award declaratory relief "as to the existence or nonexistence (1) of any right, power, privilege or immunity; or (2) of any fact upon which the existence or nonexistence of such right, power, privilege or immunity does or may depend, whether such right, power, privilege or immunity now exists or will arise in the future." Practice Book § 17-55 permits a court to award declaratory relief if the following conditions are met: "(1) The party seeking the declaratory judgment has an interest, legal or equitable, by reason of danger of loss or of uncertainty as to the party's rights or other jural relations; (2) There is an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties; and (3) In the event that there is another form of proceeding that can provide the party seeking the declaratory judgment immediate redress, the court is of the opinion that such party should be allowed to proceed with the claim for declaratory judgment despite the existence of such alternate procedure."

We afford the trial court "wide discretion to render a declaratory judgment unless another form of action clearly affords a speedy remedy as effective, convenient, appropriate and complete." (Internal quotation marks omitted.) *Pamela B. v. Ment*, 244 Conn. 296, 308, 709 A.2d 1089 (1998). We conclude that nothing precluded the court from issuing declaratory relief in the present case.

I

We first address the defendants' argument that the court lacked subject matter jurisdiction to determine

whether Shaw was Allen's employee while Shaw's workers' compensation case, in which he alleged that he was Allen's employee, was still pending. Specifically, the defendants argue that whether an individual is an employee or an independent contractor is a question of fact to be determined by the workers' compensation commissioner. In support of that argument, the defendants rely on General Statutes § 31-275, which defines "employee" within the meaning of the Workers' Compensation Act, General Statutes § 31-275 et seq. (act), and General Statutes § 31-278, which confers exclusive jurisdiction on the workers' compensation commissioner over all claims arising under the act. We are not persuaded.

As a threshold matter, we set forth the applicable standard of review for a claim challenging a trial court's subject matter jurisdiction. "A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . If a court lacks subject matter jurisdiction to hear and determine cases of the general class to which the proceedings in question belong, it is axiomatic that a court also lacks the authority to enter orders pursuant to such proceedings. . . . [A] court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it . . . . [W]here a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged." (Citations omitted; internal quotation marks omitted.) *ABB Automation, Inc.* v. *Zaharna*, 77 Conn. App. 260, 263–64, 823 A.2d 340 (2003).

"A brief overview of the purpose, relevant provisions and relevant jurisdictional confines of the [act] is necessary to a resolution of the [defendants'] jurisdictional claims. The purpose of the workmen's compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer. . . . The [act] compromise[s] an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation. . . .

"We have previously observed that the workers' compensation commission, like any administrative body, must act strictly within its statutory authority . . . . It cannot modify, abridge, or otherwise change the statutory provisions under which it acquires authority unless the statutes expressly grant it that power. . . . [I]t is settled law that the commissioner's jurisdiction is confined by the [act] and limited by its provisions. . . . The commissioner exercises jurisdiction only under the precise circumstances and in the manner particularly prescribed by the enabling legislation. . . . The parties cannot confer jurisdiction upon the commissioner by agreement, waiver or conduct. . . . The [act] is not triggered by a claimant until he brings himself within its statutory ambit. . . . Although the [act] should be broadly construed to accomplish its humanitarian purpose . . . its remedial purpose cannot transcend its statutorily defined jurisdictional boundaries." (Citations omitted; internal quotation marks omitted.) *Dowling* v. *Slotnik*, 244 Conn. 781, 799–800, 712 A.2d 396, cert. denied sub nom. *Slotnik* v. *Considine*, 525 U.S. 1017, 119 S. Ct. 542, 142 L. Ed. 2d 451 (1998).

The plaintiff sought a declaratory judgment to determine the extent of its duty, if any, to defend or to indemnify Allen. The plaintiff's declaratory judgment action is solely related to the extent of its contractual

obligation to its insured and wholly unrelated to Shaw's claim for workers' compensation benefits. The power to grant declaratory relief concerning the extent of coverage provided to Allen under the plaintiff's insurance policy lies exclusively within the province of the judicial authority while the workers' compensation commissioner can grant no declaratory relief regarding the plaintiff's obligations to defend or to indemnify Allen.

We conclude that the court had the requisite subject matter jurisdiction to determine whether Shaw was an employee of Allen for the purpose of determining the extent of the plaintiff's obligations to Allen.

## II

The defendants next argue that the court improperly determined that Shaw was Allen's employee. Specifically, the defendants argue that the court should have given greater weight to the evidence they presented in trying to persuade the court that Shaw was an independent contractor and not an employee of Allen. Thus, the defendants contend, the court's decision and rationale for its decision were improper and could not have been decided on the facts and evidence presented at trial. We disagree.

Whether someone is an employee or an independent contractor is a question of fact, absent controlling circumstances. *Ross* v. *Post Publishing Co.*, 129 Conn. 564, 567, 29 A.2d 768 (1943). Thus, the defendants' claim requires us to review a finding of fact. "A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In applying the clearly erroneous

standard to the findings of a trial court, we keep constantly in mind that our function is not to decide factual issues de novo. Our authority, when reviewing the findings of a judge, is circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence. . . . The question for this court . . . is not whether it would have made the findings the trial court did, but whether in view of the evidence and pleadings in the whole record it is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *MJM Landscaping, Inc.* v. *Lorant*, 268 Conn. 429, 436–37, 845 A.2d 382 (2004).

We turn now to the legal principles that guide our resolution of the defendants' claim. "The legal incidents of the employer-employee relationship, on the one hand, and the employer-independent contractor relationship, on the other, are well established. In *Alexander* v. *R. A. Sherman's Sons Co.*, 86 Conn. 292, 297, 85 A. 514 [1912], [the Supreme Court] adopted the definition that [an] independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work. This definition has been amplified in subsequent cases but at no time has the basic principle been altered. . . . The fundamental distinction between an employee and an independent contractor depends upon the existence or nonexistence of the *right to control* the means and methods of work." (Emphasis in original; internal quotation marks omitted.) *Hunte* v. *Blumenthal*, 238 Conn. 146, 154, 680 A.2d 1231 (1996). "It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent." (Internal quotation marks omitted.)

*Tianti* v. *William Raveis Real Estate, Inc.*, 231 Conn. 690, 697, 651 A.2d 1286 (1995). With those principles and the clearly erroneous standard of review to guide our inquiry, we turn to the court's memorandum of decision.

The court carefully detailed in its memorandum of decision the evidence it considered and found credible and convincing in determining that Allen exercised sufficient control over Shaw's work for Shaw to be Allen's employee. The court's findings recognized that Shaw worked for Allen during the spring, summer and fall from early May, 1997, until May 25, 1999, the time of the accident, and understood that his work for Allen was not temporary in nature. Shaw never performed services for Allen's clients without Allen or someone else from Allen's business being present. Before work would start at the site, the defendants would discuss what had to be done. Allen drove Shaw to all of the job sites where Allen was performing landscaping services. Allen provided all landscaping tools and equipment used by Shaw at the work site. Allen chose all of the work sites. Shaw never interacted with the owners of the properties, nor did he ever speak to any of them. None of the property owners paid Shaw. All moneys paid for the landscaping services were paid to Allen. All money Shaw received as a result of his work came directly from Allen. Shaw worked an average of fifty hours per week, and Allen paid Shaw at the rate of $10 per hour.

In concluding that Shaw was Allen's employee, the court particularly emphasized evidence showing that Allen retained the right to discharge Shaw at will, paid Shaw $10 per hour for the work he performed and provided Shaw with the tools that he needed to perform his job. "The retention of the right to discharge . . . is a strong indication that [the employer's] relationship with [the worker] was one of employment. . . . The

right to terminate [an employment] relationship without liability is not consistent with the concept of an independent contract. . . . Moreover, payment of a worker at an hourly rate . . . is persuasive evidence that the status of the worker is that of an employee rather than that of an independent contractor." (Citations omitted; internal quotation marks omitted.) *Latimer* v. *Administrator, Unemployment Compensation Act*, 216 Conn. 237, 249, 579 A.2d 497 (1990). Additionally, the fact that a worker did not have any significant investment in the materials or tools necessary to perform the job and that the necessary equipment or materials were furnished by the employer are factors that weigh in favor of a determination that the relationship between the plaintiff and Shaw was that of employer-employee and not that of an independent contractor. See id., 250. Even more important is the court's finding that Shaw never performed services for Allen's clients without Allen or someone else from Allen's business being present. "[This] finding embodies the logical inference that the reporting and monitoring had a purpose and that, if the [services rendered to the employer] were unsatisfactory, [the employer] could, and would, intervene and take corrective measures. That right of intervention . . . evinces a right to control . . . ." Id., 250–51.

On the basis of our review of the record, we conclude that it was not clearly erroneous for the court to find that Allen exercised sufficient control over Shaw for Shaw to be Allen's employee.

### III

The defendants next argue that the court improperly determined that Shaw was not a temporary worker within the meaning of the insurance policy. Specifically, they argue that the court should have decided that the policy language was ambiguous because the court was

presented with two separate, reasonable interpretations of the language. We disagree.

At the outset, we set forth our standard of review. The plaintiff's argument requires analysis of the terms of the insurance policy. "The [i]nterpretation of an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy." (Internal quotation marks omitted.) *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 399, 757 A.2d 1074 (2000). The question of the parties' intent is "[o]rdinarily . . . a question of fact [subject to appellate review under the clearly erroneous standard]. . . . If, however, the language of the contract is clear and unambiguous, the court's determination of what the parties intended in using such language is a conclusion of law. . . . In such a situation our scope of review is plenary, and is not limited by the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) *CAS Construction Co.* v. *East Hartford*, 82 Conn. App. 543, 552, 845 A.2d 466 (2004). Thus, in the absence of a claim of ambiguity, the interpretation of an insurance contract presents a question of law. See *Galgano* v. *Metropolitan Property & Casualty Ins. Co.*, 267 Conn. 512, 519, 838 A.2d 993 (2004).

Well established principles guide our analysis in determining whether the language of a contract is ambiguous. "[A] contract is ambiguous if the intent of the parties is not clear and certain from the language of the contract itself. [A]ny ambiguity in a contract must emanate from the language used by the parties. . . . The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so." (Internal quotation marks omitted.) *Detels* v. *Detels*, 79 Conn. App. 467, 472, 830 A.2d 381 (2003). In

contrast, "[a] contract is unambiguous when its language is clear and conveys a definite and precise intent. . . . The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Citations omitted; internal quotation marks omitted.) *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 670, 791 A.2d 546 (2002).

Thus, to determine our standard of review, we must first ascertain whether the language of the insurance policy is ambiguous. Specifically, whether the term "temporary worker," when read in the light of the contract as a whole, unambiguously includes persons engaged in the type of working relationship Shaw had with Allen. To answer that question, we turn to the relevant language of the insurance policy.

The policy in effect at the time of Shaw's accident, "COMMERCIAL GENERAL LIABILITY COVERAGE FORM," provided in relevant part:

"SECTION I—COVERAGES

"COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY . . .

"2. Exclusions

"This insurance does not apply to . . .

"d. Workers Compensation and Similar Laws

"Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

"e. Employer's Liability

" 'Bodily injury' to:

"(1) An 'employee' of the insured arising out of and in the course of:

"(a) Employment by the insured; or

"(b) Performing duties related to the conduct of the insured's business . . .

"This exclusion applies:

"(1) Whether the insured may be liable as an employer or in any other capacity; and

"(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury. . . .

"SECTION V—DEFINITIONS . . .

"5. 'Employee' includes a 'leased worker'. 'Employee' does not include a 'temporary worker'. . . .

"9. 'Leased worker' means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. 'Leased worker' does not include a 'temporary worker'. . . .

"17. 'Temporary worker' means a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions."

The defendants argue that the "temporary worker" definition is ambiguous because their interpretation differs from that of the plaintiff. The defendants in their brief construe the "temporary worker" definition to mean "a person (1) who is furnished to you to substitute for a permanent employee on leave or (2) who is furnished to you to meet seasonal workload conditions or (3) who is furnished to you to meet short-term workload conditions." The plaintiff, however, construes "temporary worker" to mean "a person who is furnished to

you to substitute for a permanent 'employee' on leave or [a person who is furnished to you] to meet seasonal or short-term workload conditions."

Mindful that "[t]he court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity . . . [and that] the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous"; (citation omitted; internal quotation marks omitted) *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, supra, 259 Conn. 670; we conclude that the temporary worker language is clear and unambiguous. Under the terms contained in the four corners of the subject insurance contract, a temporary worker is a person who must be "furnished" to the insured to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions. Thus, because we conclude that the contract is unambiguous, the defendants' argument raises a question of law over which we exercise plenary review.

A plain reading of the relevant provisions of the insurance policy and an examination of the facts lead to the conclusion that Shaw was not a temporary worker as defined by the policy, because he was not "furnished" to Allen. The court found that Allen did not go to an employment agency, manpower service provider or any similar service to employ or to utilize Shaw's services. Shaw was not employed by anyone who lent or furnished him to Allen as an employee. Thus, the court reasonably concluded that Shaw was not furnished to Allen within the definition of "temporary worker" and could not be a temporary worker under the insurance policy. Additionally, we observe that the temporary worker definition makes no grammatical sense without the "furnished by" language.

We conclude that the language of the contract is clear and unambiguous, that Shaw was not a temporary

worker under the insurance policy and that the contract is to be given effect according to its terms.

## IV

Finally, the defendants argue that the court improperly determined that statements made by Shaw contained in his workers' compensation claim constituted an admission. We disagree.

We must determine whether a statement made in a workers' compensation claim, when entered into evidence in a civil action, may be considered as an admission. We conclude that it may. "Because the probative value of an admission depends on the surrounding circumstances, it raises a question for the trier of fact." *Willow Funding Co., L.P.* v. *Grencom Associates,* 246 Conn. 615, 621, 717 A.2d 1211 (1998). The trier of fact is free to give as much weight to such an admission as, in the trier's judgment, it merits, and need not believe the arguments made regarding the statement by one side or the other.

"The distinction between judicial admissions and mere evidentiary admissions is a significant one that should not be blurred by imprecise usage. . . . While both types are admissible, their legal effect is markedly different; judicial admissions are conclusive on the trier of fact, whereas evidentiary admissions are only evidence to be accepted or rejected by the trier." (Internal quotation marks omitted.) *Tianti* v. *William Raveis Real Estate, Inc.,* supra, 231 Conn. 695 n.6.

"Factual allegations contained in pleadings upon which the cause is tried are considered judicial admissions and hence irrefutable as long as they remain in the case." (Internal quotation marks omitted.) *West Haven Sound Development Corp.* v. *West Haven,* 201 Conn. 305, 312, 514 A.2d 734 (1986). "The admission of the truth of an allegation in a pleading is a judicial admission

conclusive on the pleader." (Internal quotation marks omitted.) *Cross* v. *Hudon*, 42 Conn. App. 59, 65, 677 A.2d 1385, cert. denied, 239 Conn. 932, 683 A.2d 400 (1996). "A judicial admission dispenses with the production of evidence by the opposing party as to the fact admitted, and is conclusive upon the party making it." (Internal quotation marks omitted.) *Tianti* v. *William Raveis Real Estate, Inc.*, supra, 231 Conn. 695 n.7.

In contrast with a judicial admission, which prohibits any further dispute of a party's factual allegation contained in its pleadings on which the case is tried, "[a]n evidential admission is subject to explanation by the party making it so that the trier may properly evaluate it." (Internal quotation marks omitted.) *Willow Funding Co., L.P.* v. *Grencom Associates*, supra, 246 Conn. 621. Thus, an evidential admission, "while relevant as proof of the matter stated . . . [is] not conclusive." (Citation omitted.) *Remkiewicz* v. *Remkiewicz*, 180 Conn. 114, 118, 429 A.2d 833 (1980). "As a general rule statements in withdrawn or superseded pleadings, including complaints, may be considered as evidential admissions [of] the party making them, just as would any extrajudicial statements of the same import." (Internal quotation marks omitted.) *Danko* v. *Redway Enterprises, Inc.*, 254 Conn. 369, 375, 757 A.2d 1064 (2000).

We conclude that the statement in Shaw's workers' compensation claim indicating that he was Allen's employee was an evidential admission. As such, it properly was the subject of evaluation by the trier of fact when it made findings from which it drew its conclusions. The court's reliance on Shaw's statement in his workers' compensation claim as evidence that Shaw was Allen's employee was neither unfairly prejudicial to Shaw nor clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.