OPINION OF THE COURT
Christine A. Sproat, J.
Intervenor Giuliana Mendola moves for an order of this court granting reargument and renewal of the prior decision, order and judgment of this court dated May 31, 2007, and upon such reargument/renewal, granting summary judgment to the plaintiff and the intervenor and against the defendant.
Defendants Excelsior Insurance Company, Peerless Insurance Company and Liberty Mutual Insurance Company move for summary judgment dismissing all claims against the defendants and declaring no coverage is afforded for the underlying incident.
Ordered that the defendants Excelsior Insurance Company, Peerless Insurance Company and Liberty Mutual Insurance Company’s motion for summary judgment is denied. Further, intervenor Giuliana Mendola’s motion for reargument and renewal is granted and upon reargument and renewal the court’s May 31, 2007 decision, order, and judgment is amended to include the following language:
“Plaintiff Nick’s Brick Oven Pizza, Inc. and intervenor Giuliana Mendola’s cross motions for summary judgment are granted to the extent that it is hereby declared that defendant Excelsior Insurance Company is obligated to defend and indemnify plaintiff Nick’s Brick Oven Pizza, Inc. in the underlying personal injury action entitled Giuliana Mendola v Travis B. Schmidt and Nick’s Brick Oven Pizza, Inc. (index No. 2004/330 [Sup Ct, Dutchess County]).”
The instant declaratory judgment action arises out of defendant Excelsior Insurance Company’s failure to defend or indemnify the plaintiff, its insured, in personal injury litigation commenced against the plaintiff. It is undisputed that defendant Excelsior Insurance Company issued policy No. BOP 9170449, a commercial general liability policy, to plaintiff Nick’s Brick Oven Pizza, Inc. for the period June 3, 2003 to June 3, 2004. (Defendant Excelsior Insurance Company allegedly is a *738 subsidiary of defendant Peerless Insurance Company which is a member of the Liberty Mutual Insurance Group.) It is further undisputed that on June 19, 2003 Travis B. Schmidt, who was in the employ of plaintiff Nick’s Brick Oven Pizza, Inc., was operating his motor vehicle when he rear-ended a vehicle operated by Giuliana Mendola. At the time of the accident, Travis B. Schmidt was delivering a pizza to one of plaintiffs customers.
On or about January 23, 2004, Giuliana Mendola commenced a personal injury action against Travis B. Schmidt and Nick’s Brick Oven Pizza, Inc. Nick’s Brick Oven Pizza, Inc. promptly notified its insurance carrier of the suit. However, by letter dated March 23, 2004, defendant Peerless Insurance Company disclaimed coverage. In this letter, Peerless Insurance Company quoted from provisions of the insurance policy and disclaimed coverage as follows:
“B. EXCLUSIONS
“1. Applicable to Business Liability Coverage
“This insurance does not apply to: . . .
“g. Aircraft, Auto or Watercraft
“ ‘Bodily injury’ or ‘property damage’ arising out of the ownership, maintenance, use or entrustment to others of any aircraft, ‘auto’ or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and ‘loading or unloading.’
“C. WHO IS AN INSURED . . .
“2. Each of the following is also an insured:
“a. Your ‘employees’, other than either your ‘executive officers’ (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company) but only for acts within the scope of their employment by you, or while performing duties related to the conduct of your business. However, none of these ‘employees’ is an insured for: [sic]
“Based on the above outlined policy provisions, this claim is not covered by your policy. Your employee, Travis Schmidt who was operating his vehicle at this time of the loss is considered an employee under Section C, Who Is An Insured. Therefore, under the exclusion, g. there is no coverage for automobiles operated by any insured.
“Peerless Insurance Company hereby formally *739 disclaims and denies any coverage under the policy of insurance you have with us. We shall not respond to any claims presented, participate in the defense of any litigation or indemnify you for any judgment awarded in the above matter.” (Peerless Insurance Company’s Mar. 23, 2004 disclaimer letter at 2-3 [emphasis added].)
It is undisputed that if Travis B. Schmidt was an “employee” as defined in the insurance policy, then no insurance coverage would be provided. However, if Travis B. Schmidt was a “temporary worker” as defined in the policy, then insurance coverage would exist. A review of the terms and conditions of the insurance policy reveals that “temporary worker” is defined as follows: “ ‘Temporary worker’ means a person who is furnished to you to substitute for a permanent ‘employee’ on leave or to meet seasonal or short-term workload conditions.” (Policy of insurance at 11.) In the instant matter sufficient evidence has been submitted in admissible form to establish that Travis B. Schmidt was a worker who met “seasonal or short-term workload conditions.” (Policy of insurance at 11.) Nick D’Alessandro, principal of plaintiff Nick’s Brick Oven Pizza, Inc., was deposed on July 26, 2007. In response to questioning by defendant’s attorney Mr. Harris, Mr. D’Alessandro testified as follows:
“BY: MR HARRIS:
“Q. Did you contact Mr. Levine [plaintiffs accountant] with respect to any paperwork for Mr. Schmidt?
“A. No.
“Q. Do you know if Mr. Levine has any paperwork for Mr. Schmidt?
“A. That, I don’t know. I don’t know if Mr. Levine has any paperwork for the ten years I’ve been in business for any of my temporary workers.
“Q. When you say temporary workers, what do you mean?
“A. Somebody to help me in times when I’m more busy. This is a small business, so . . . I’m sure you’ve been in a pizzeria. People eat when its warm. I’m right next to the ball fields. My ball fields are busy May, June, July, you know, August. Families go away, but still the ball fields are busy and then, you know, September, October comes and people go back *740 to school, you know.” (Examination before trial testimony of Nick D’Alessandro at 22-23.)
In addition, Nick D’Alessandro testified as follows:
“Q. When did you first meet or come to know of Travis Schmidt?
“A. Through a friend of mine.
“Q. Who is that friend?
“A. Jesse Schewtschenko . . .
“Q. How did it come about that Jesse spoke to you about Travis Schmidt?
“A. I needed more help and I asked him if he knew anybody, and he said, ‘yeah’. . .
“Q. What did he tell you about Travis Schmidt?
“A. He said that he’s a friend of his and he thinks he would be pretty good.
“Q. At that point in time, what were you looking for?
“A. Delivery or counter help.
“Q. Were you looking for a full time or permanent or a part time position?
“A. Usually just enough help to get me through my busy season.
“Q. What’s your busy season?
“A. Usually May through the summer, through August.” (Examination before trial testimony of Nick D’Alessandro at 12-13.)
Further, Nick D’Alessandro stated in his affidavit that, “I recall that TS [Travis Schmidt] was hired as a temporary worker to help during the summer months when the restaurant business generally picked up. . . . Because of the temporary nature of his employment, and because he never really completed his trial period, I never issued TS [Travis Schmidt] a 1099 or W-2, and never put him ‘on the books’. I recall that TS [Travis Schmidt] was going to college or going back to college at the end of the summer, and that his employment was only temporary and was needed to meet the seasonal and short term workload conditions of the busy summer months, vacation periods, etc. During the summer, it is not unusual for the restaurant to need several temporary workers to help fill in the schedule for my regular employees who take a day off, go on vaca *741 tion, or get sick, or just to assist in the extra workload I have to deal with in the summer months.” (Affidavit of Nicholas D’Alessandro at 2-3.)
The defendants have failed to raise a triable issue of fact with respect to Travis Schmidt being a worker who met “seasonal or short-term workload conditions.” Yet, the defendants argue that even if Mr. Schmidt was a worker who met “seasonal or short-term workload conditions,” he still was not “furnished to” the insured Nick’s Brick Oven Pizza, Inc. as required by the policy. Defendants assert that, “To be ‘furnished’ means to be employed through a headhunter, employment agency, manpower service provider or similar service. As such, plaintiffs attempt to characterize a friend-of-a-friend referral ... as being ‘furnished’ is not supported by the existing case law.” (Affirmation of Kimberly E. Whistler, Esq. paras 28, 29.) However, this court finds the phrase “furnished to” as found in the temporary worker provision to be ambiguous.
“The phrase ‘furnished to’ is not defined by the policy and is reasonably susceptible to multiple meanings. To qualify under this definition, does the worker have to be ‘furnished’ by a temporary employment agency? Or can another individual ‘furnish’ a person to the insured merely by recommending him? The policy’s only help in answering these questions is found in its definition of ‘leased worker,’ which means a worker who is ‘leased’ to the insured by a labor-leasing firm pursuant to a contract. The policy’s contemplation of workers being leased under contract in defining another kind of worker lends support for the finding that ‘furnished to’ in the context of a ‘temporary worker’ does not necessarily mean ‘furnished to’ by a temporary employment agency. If ‘furnished to’ required a temporary employment agency’s placement, the policy should read accordingly. The policy’s use of the phrase, however, also could reasonably mean the furnishment of a worker by any third party, which the [plaintiff] contends is the case. Based upon the words of the insurance policy alone, it is impossible for the court to determine what is meant by the phrase ‘furnished to’ . . .
“The policy’s definition also is unclear as to whether a person must be ‘furnished to’ the insured to meet seasonal demands or short-term conditions to be a temporary worker or whether a person can meet *742 the definition merely by being hired to meet seasonal demands or short-term conditions. In other words, does ‘furnished to’ modify both parts of the definition or just the first part. In analyzing this exact definition of ‘temporary worker,’ a Connecticut court held that ‘furnished to’ modified both parts and that a person could never be a ‘temporary worker’ if the person was not ‘furnished to’ the insured. Nationwide Mut. Ins. Co. v. Allen, 83 Conn. App. 526, 850 A.2d 1047, 1057 (2004). The Connecticut Appellate Court stated that the definition would not make grammatical sense if the phrase ‘furnished to’ only modified the first part; this court, however, disagrees as the definition’s second-part can make grammatical sense when the words ‘furnished to’ are discarded. In that case, a temporary worker would be 1) a person furnished to the insured to substitute for a permanent employee for leave or 2) a person to meet seasonal demands and short-term workload conditions.
“The U.S. District Court for the Western District of Kentucky also found this definition ambiguous. Ayers v. C & D Gen. Contrs., 237 F. Supp.2d 764, 768-69 (W D Ky 2002). The court explained that this definition was an example of ‘less than perfect draftsmanship,’ an assertion with which this court certainly agrees ... In that case, the court found that the insurance company placed too much weight on the phrase ‘furnished to [the insured].’ Id. The court explained that the definition’s purpose was clear: ‘If an employee is hired to fill-in for a permanent employee on leave or to meet a short-term need, the [ ] policy classifies that employee as a “temporary worker” and thus exempt from the coverage’s exclusion for bodily injuries to an “employee.” ’ Id.” (Bituminous Cas. Corp. v Mike Ross, Inc., 413 F Supp 2d 740, 745 [ND W Va 2006].)
In the case sub judice, since
“the language of the policy does not explicitly require that the temporary worker be furnished to [Nick’s] by a third party, such as a temporary worker leasing company or other business, a reasonable interpretation is that the worker could be furnished to [Nick’s] by any person or company, *743 including another employee of the employer, as was the case here. Because the policy is silent as to who must furnish the person to [Nick’s] for the person to qualify as a temporary worker, and there are several reasonable interpretations as to who that might be, the policy is ambiguous.” (National Indent. Co. of S. v Landscape Mgt. Co., Inc., 963 So 2d 361, 364 [Fla Ct App, 4th Dist 2007].)
“To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case.” (Westview Assoc. v Guaranty Natl. Ins. Co., 95 NY2d 334, 340 [2000], quoting Continental Cas. Co. v Rapid-American Corp., 80 NY2d 640, 652 [1993], and citing Technicon Elecs. Corp. v American Home Assur. Co., 74 NY2d 66, 73-74 [1989], and International Paper Co. v Continental Cas. Co., 35 NY2d 322, 325-326 [1974].)
“An exclusion from coverage ‘must be specific and clear in order to be enforced’ (Seaboard Sur. Co. v Gillette Co., 64 NY2d 304, 311 [1984]), and an ambiguity in an exclusionary clause must be construed most strongly against the insurer (see Ace Wire & Cable Co. v Aetna Cas. & Sur. Co., 60 NY2d 390, 398 [1983]; Guachichulca v Laszlo N. Tauber & Assoc., LLC, 37 AD3d 760 [2007]; Bassuk Bros. v Utica First Ins. Co., 1 AD3d 470, 471 [2003]). The insurance company bears the burden of establishing that the exclusion applies in a particular case and it is subject to no other reasonable interpretation (see Seaboard Sur. Co. v Gillette Co., supra; MDW Enters. v CNA Ins. Co., 4 AD3d 338, 340 [2004]). The test for ambiguity is whether the language of the insurance contract is ‘susceptible of two reasonable interpretations. ’ (State of New York v Home Indem. Co., 66 NY2d 669, 671 [1985]; MDW Enters. v CNA Ins. Co., supra at 340-341).” (Essex Ins. Co. v Pingley, 41 AD3d 774, 776 [2d Dept 2007].)
It is well settled that “[p]olicy exclusions ‘are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction.’ ” (Incorporated Vil. of Cedarhurst v Hanover Ins. Co., 89 NY2d 293, 298 [1996], quoting Seaboard Sur. Co. v Gillette Co., 64 NY2d 304, 311 [1984].) In addition, “[i]f the language of the policy is doubtful or uncertain in its meaning, any ambiguity must be resolved in favor of *744 the insured and against the insurer,” the drafter of the agreement. (Westview Assoc. v Guaranty Natl. Ins. Co., 95 NY2d 334, 340 [2000], citing Hartol Prods. Corp. v Prudential Ins. Co., 290 NY 44, 49 [1943].)
“That being the case, the ambiguity must be construed against [defendant Excelsior Insurance] and [Travis Schmidt] qualifies as a ‘temporary worker’. Consequently, the exclusion does not apply, and coverage must be provided.
“In sum, [Excelsior Insurance] failed to explicitly require in its policy that a third party, such as a temporary labor leasing company or other business, furnish the person to [Nick’s] in order for a person to qualify as a ‘temporary worker’ under the insurance policy. Because it is the insurer’s responsibility to clearly set forth what damages are excluded from coverage under the terms of the policy and ambiguous provisions are construed . . . strictly against the insurer,” the construing of the policy in favor of coverage for Nick’s is appropriate. (National Indem. Co. of S. v Landscape Mgt. Co., Inc., 963 So 2d 361, 364 [Fla Ct App, 4th Dist 2007]; see also Essex Ins. Co. v Pingley, 41 AD3d 774 [2d Dept 2007], Iv denied 9 NY3d 811 [2007].)