Ruth MENDENHALL, Appellant,

v.

PROPERTY AND CASUALTY
INSURANCE COMPANY OF
HARTFORD, Respondent,

and

Jay Walker, Defendant.

No. SC 92202.

Supreme Court of Missouri,
En Banc.

July 31, 2012.

Amy Lynn Fehr, Mark E. Goodman, Capes, Sokol, Goodman & Sarachan PC, St. Louis, for Mendenhall.

John L. Hayob, Diane Hastings Lewis, Brown & Ruprecht, Kansas City, for the insurance company.

RICHARD B. TEITELMAN, Chief Justice.

Ruth Mendenhall appeals a summary judgment in favor of Property and Casualty Insurance Company of Hartford (Hartford) on her equitable garnishment claim seeking insurance coverage for the death of her husband, Len Mendenhall. The trial court's judgment was premised on the conclusion that Mr. Mendenhall was an "employee" under the terms of the Hartford policy and, therefore, was excluded from coverage. The judgment is reversed because Mr. Mendenhall was a not an "employee" but was instead a "temporary worker" subject to coverage under the terms of the Hartford policy.

## FACTS

In May 2006, Mr. Mendenhall interviewed for a job with the Family Center of Farmington, Inc. (Family Center). The Family Center did not hire Mr. Mendenhall. However, the person who interviewed Mr. Mendenhall for the Family Center informed Jay Walker, the owner of the Family Center, that Mr. Mendenhall would be a good candidate for a job. Based on the Family Center's recommendation, Mr. Walker hired Mr. Mendenhall to work for him personally at the cattle farm (farm) that Mr. Walker co-owned with his wife.

Mr. Mendenhall worked at the farm on an as-needed basis. Although Mr. Mendenhall was always paid by the farm, Mr. Walker occasionally asked Mr. Mendenhall to perform tasks for the Family Center. Mr. Walker also permitted Mr. Mendenhall to use a truck and trailer owned by the Family Center. This truck and trailer was covered under a business automobile liability policy (the Hartford policy) provided by Hartford and issued to the Family Center.

On March 8, 2007, Mr. Mendenhall was using the Family Center's truck and trailer to haul rock for Mr. Walker at the farm. Mr. Mendenhall was killed when the truck overturned as he was unloading the rock.

Mrs. Mendenhall filed a wrongful death suit against the Family Center and the Walkers.[1] Mrs. Mendenhall dismissed her claim against Mrs. Walker and obtained an $840,000 judgment against Mr. Walker and a $50,000 judgment against the Family Center. Prior to the judgment, Mr. Walker and Mrs. Mendenhall entered an agreement pursuant to section 537.065, RSMo 2000, which provided that any judgment against Mr. Walker would be collected from the proceeds of the Hartford policy. Hartford denied any obligation to indemnify Mr. Walker for claims resulting from Mr. Mendenhall's death.

Mrs. Mendenhall then filed the underlying action for equitable garnishment to satisfy the $840,000 judgment under the coverage provided by the Family Center's Hartford policy. The Hartford policy contains an exclusion from liability coverage for employees of the insured. The definition of "employee" specifically includes a "leased worker" but does not include a "temporary worker." These two terms are defined in the Hartford policy:

"Leased worker" means a person leased to you by a labor leasing firm under an

1. Because Mr. Mendenhall was employed in farm labor at the time of his death, he was not covered by workers' compensation. Section 287.090.1(1), RSMo Supp.2008.

agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."

. . .

"Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

This policy language means that the dispositive issue is whether Len Mendenhall was an "employee" or a "temporary worker." If Mr. Mendenhall was an "employee," there is no insurance coverage. If he was a "temporary worker," there is insurance coverage.

The trial court entered summary judgment for Hartford. The court concluded that Mr. Mendenhall was excluded from coverage because he was Mr. Walker's "employee." The trial court found that Mr. Mendenhall was not a covered "temporary worker" because he was not "furnished to" Mr. Walker by an employment service or similar organization. Mrs. Mendenhall appeals.

### ANALYSIS

■ "The interpretation of an insurance policy, and the determination whether coverage and exclusion provisions are ambiguous, are questions of law that this Court reviews de novo." *Burns v. Smith,* 303 S.W.3d 505, 509 (Mo. banc 2010). "Where, as here, the trial court granted summary judgment, this Court also applies a de novo standard of review." *Id.*

■ Ambiguities in the meaning of an insurance policy are resolved in favor of the insured, and exclusionary clauses are strictly construed against the drafter. *Burns,* 303 S.W.3d at 509. When resolving coverage ambiguities, this Court must apply the meaning that would be attached by an ordinary person of average understanding if purchasing insurance and resolve ambiguities in favor of the insured. *Jones v. Mid–Century Insurance Co.,* 287 S.W.3d 687, 690 (Mo. banc 2009). An ambiguity exists when a phrase is "reasonably open to different constructions." *Burns,* 303 S.W.3d at 509.

The parties agree that Mr. Mendenhall worked for Mr. Walker to meet seasonal or short-term workload conditions and that temporary workers are covered by the Hartford policy. There is also no dispute that the phrase "furnished to" requires the involvement of a third party. *See Gavan v. Bituminous Cas. Corp.,* 242 S.W.3d 718, 720–21 (Mo. banc 2008). Therefore, the dispositive issue is whether Mr. Mendenhall was "furnished to" Mr. Walker by the Family Center so that he qualifies as a "temporary worker" subject to coverage under the Hartford policy. Hartford asserts that the Family Center could not have furnished Mr. Mendenhall because the Family Center was not an employment agency and did not employ Mr. Mendenhall. Mrs. Mendenhall asserts that an agency or employment relationship is unnecessary and that Mr. Mendenhall was "furnished to" Mr. Walker by Family Center's referral. The issue, then, is the nature of the third party's relationship with the prospective worker.

■ The term "furnished to" is not defined in the policy. When interpreting insurance policy language, courts give a term its ordinary meaning unless it plainly appears that a technical meaning was intended. *Farmland Indus., Inc. v. Republic Ins. Co.,* 941 S.W.2d 505, 508 (Mo. banc 1997). It does not appear plainly that the term "furnished to" has a precise technical meaning. Therefore, the standard English dictionary definition governs. *Id.*

The standard definition of the word "furnish" is "to provide or supply with what is needed, useful or desirable." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 923 (2002). Similarly, BLACK'S LAW DICTIONARY defines "furnish" as "to supply, provide or equip, for accomplishment of a particular purpose." Black's Law Dictionary 675 (6th ed. 1990).

In the context of this case, neither the word "furnish" nor its synonyms "provide" and "supply" necessarily require the Family Center and Mr. Mendenhall to have an employment or agency relationship to support a finding that the Family Center furnished Mr. Mendenhall to work for Mr. Walker. The proposition that the phrase "furnished to" does not necessarily require an agency or employment relationship between the third party and the prospective worker can be tested by assuming, for the sake of argument, that the Family Center was an employment agency acting on behalf of Mr. Mendenhall. If that were the case, the fact remains that Mr. Mendenhall simply could have declined the job working for Mr. Walker. Therefore, the existence of an agency relationship between the Family Center and Mr. Mendenhall is not a necessary or even a practically useful focal point for determining whether the Family Center furnished Mr. Mendenhall to Mr. Walker.

The more relevant consideration is the undisputed fact that Mr. Walker did not interview Mr. Mendenhall and relied solely on the Family Center's referral in making his decision to hire Mr. Mendenhall. The Family Center's referral supplied and provided Mr. Walker with the information he used to hire Mr. Mendenhall on an as-needed basis. Without the information furnished by the Family Center, a business owned solely by Mr. Walker, Mr. Walker would not have hired Mr. Mendenhall. It was through the Family Center's referral that Mr. Mendenhall was "furnished to" Walker as a temporary worker. The existence of an agency relationship between Mr. Mendenhall and the Family Center was wholly irrelevant to Mr. Walker's decision to hire Mr. Mendenhall and, therefore, is not necessary to show that the Family Center furnished Mr. Mendenhall to work for Mr. Walker. As such, the plain language meaning of the phrase "furnished to" plausibly can be interpreted to include situations such as this, where the employment decision is based solely on the third party referral.

The ambiguity is illustrated further by the Hartford policy's definition of "leased worker," which, unlike the "temporary worker" definition, specifies a particular third party. The definition specifically states that a "leased worker" is a person "leased to you by a labor leasing firm . . . ." In contrast, the definition of "temporary worker" is not qualified by the existence of any agency or employment relationship. Hartford argues that an express reference to an agency or employment relationship is unnecessary because of the clear definition of "furnish," yet, as established above, the phrase "furnished to" does not necessarily require the furnisher to be an employment agency. Therefore, the difference in the level of specificity between the two definitions is a relevant consideration. *See Nick's Brick Oven Pizza, Inc. v. Excelsior Ins. Co.*, 19 Misc.3d 736, 853 N.Y.S.2d 870, 873–74 (N.Y.Sup.Ct.2008); *Carl's Italian Rest. v. Truck Ins. Exch.*, 183 P.3d 636, 640 (Colo.Ct.App.2007) (stating "[t]he 'leased worker' provision requires that the worker be furnished by a particular type of third party, while the 'temporary worker' provision requires involvement of any type of third party"). These differing views further indicate an ambiguity in the interpretation of "furnish" with respect to third parties.

Finally, as Hartford notes, there are cases holding that the phrase "furnished to" unambiguously requires that the worker be furnished to the employer from an employment agency or a similar service. *See Burlington Ins. Co. v. De Vesta,* 511 F.Supp.2d 231, 233 (D.Conn.2007); *Brown v. Ind. Ins. Co.,* 184 S.W.3d 528, 538 (Ky. 2005). However, other courts have held that the phrase "furnished to" also encompasses simply referring a prospective worker to an employer. *See Nat'l Indem. Co. of S. v. Landscape Mgmt. Co., Inc.,* 963 So.2d 361, 363 (Fla.Dist.Ct.App.2007) (worker furnished by another employee); *Nick's Brick Oven Pizza,* 853 N.Y.S.2d at 872–73 (worker furnished by referral from friend of employer). The fact that the phrase "furnished to" does not necessarily presuppose the existence of an agency relationship, combined with the definition of "leased worker" and the foregoing cases, means that the phrase "furnished to" is ambiguous as it is reasonably susceptible to alternate interpretations. Therefore, under the facts of this case, the phrase "furnished to" is ambiguous and the policy should be construed against the insurer. Given the facts of this case and the policy language, Mr. Mendenhall was Mr. Walker's "temporary worker" and is covered by the Hartford policy.

The dissent asserts that providing coverage in this case is tantamount to a holding that one who recommends a potential employee to another must be considered to have furnished the employee. The issue is not whether the phrase "furnished to" necessarily includes referrals or recommendations. Instead, the issue is whether the average consumer would conclude that the phrase "furnished to" precluded coverage under the circumstance of this case. As established above, under the facts of this case, the phrase "furnished to" is susceptible to plausible, alternative interpretations, and this ambiguity is resolved in favor of the insured. Therefore, the judgment is reversed, and the case is remanded.

RUSSELL and BRECKENRIDGE, JJ., and MOBLEY, Sp.J., concur.

STITH, J., dissents in separate opinion filed; FISCHER and PRICE, JJ., concur in opinion of STITH, J.

DRAPER, J., not participating.

LAURA DENVIR STITH, Judge.

I respectfully dissent. The dispositive issue in this case is whether a third party can "furnish" an employee to an employer by merely recommending or referring him to the employer. In *Gavan v. Bituminous Cas. Corp.,* 242 S.W.3d 718 (Mo. banc 2008), this Court addressed the meaning of "furnish" in the same "temporary worker" exception at issue in this case and held that " 'furnished to,' in context and in its plain and ordinary meaning, is not ambiguous and necessarily implies that a third party has been involved in providing or supplying the worker to the insured." *Id.* at 720–21.

The majority correctly defines "furnish" as to provide or supply. But the majority incorrectly finds that when an employee of the Family Center called Mr. Walker and recommended him as a seemingly good potential farm employee, the Family Center thereby "furnished" Mr. Mendenhall to Mr. Walker.

Conflating recommending an employee with "furnishing" him is simply incorrect. The majority cites no case law, statute or dictionary that uses or defines "furnish" as recommending or referring someone or something. That is because the words have different meanings. "Furnish" is synonymous with supply and provide. One cannot provide or supply a product one does not have. Similarly, one cannot provide or supply a person to an employer

if one does not have any authority to direct the actions of that person. While one without authority over another can provide a recommendation for that person, that the employer who received the recommendation chose to hire the person without further investigation is not within the control of the referring party and does not turn the giving of a reference into the "furnishing" of an employee.

The majority cites *Nick's Brick Oven Pizza, Inc. v. Excelsior Ins. Co.*, 19 Misc.3d 736, 853 N.Y.S.2d 870, 873–74 (N.Y.Sup.Ct.2008), and *Nat'l Indem. Co. of the S. v. Landscape Mgmt. Co., Inc.*, 963 So.2d 361, 363–64 (Fla.Dist.Ct.App.2007), to support its argument that a third party can "furnish" an employee to an employer by merely recommending the employee. Those cases, like the majority, simply assume that because any type of third party, not just employment agencies, *may* "furnish" a "temporary worker," then anyone who recommends a potential employee to another *will* be considered to have furnished the employee. It is unclear on what basis this inference arises, however, as "furnish" and "recommend" just are not synonymous. *See Excelsior*, 853 N.Y.S.2d at 873–74; *Nat'l Indemn. Co.*, 963 So.2d at 363–64. One who gives an employee or friend a reference letter is not intending thereby to "furnish" that person to the recipients of the reference. It is unclear that this will remain the case following this opinion, and the consequences for those who seek reference letters could be devastating.

"Furnish" properly defined does not include merely recommending or referring a person to an employer. This means that the "temporary worker" exception to the employee exclusion in Hartford's policy does not apply here, as it applies only to "furnished" workers; it does not say it applies to recommended workers.

It is unfortunate that Mrs. Mendenhall and Mr. Walker agreed that the judgment against Mr. Walker would be satisfied only from the proceeds of that policy because Mrs. Mendenhall will not recover fully for her loss. But, as the old adage goes, bad facts can make bad law. The agreement between Mrs. Mendenhall and Mr. Walker, while unwise, should not form the basis for a change in the legal meaning of the word "furnish." This Court "is not permitted to create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is more appropriate." *Rodriguez v. Gen. Acc. Ins. Co. of Am.*, 808 S.W.2d 379, 382 (Mo. banc 1991). That is exactly what the majority does here.

Further, although the majority's construction of the word "furnish" will permit recovery here, it could have the unintended and potentially drastic consequence of denying workers' compensation coverage to scores of other workers who otherwise would have been covered as employees under the workers' compensation act. Under the majority's approach, any part-time or seasonal workers who are recommended or referred to their employer are temporary workers, not employees, and, therefore, are not covered by their employers' workers' compensation insurance. If their employer has no private insurance, as often will be the case, then they will have no source of recovery.

As *Gavan* explained, the word "furnish" is given the same meaning in a commercial liability insurance policy and in the workers' compensation act because employee exclusion clauses in standard commercial business insurance policies intentionally are written in parallel fashion to the act so as to provide coverage for the public under commercial insurance policies without duplicating the coverage given to employees under the act. *Gavan*, 242 S.W.3d at 721–

22.[1] This is why it has been the long-standing practice of Missouri courts to "turn to the Workmen's Compensation Act in determining the meaning of the word 'employee' as used in exclusion clauses of liability insurance policies," *Ward v. Curry*, 341 S.W.2d 830, 835 (Mo.1961). As *Gavan* stated, this dichotomy allows employers and insurers:

" '[T]o draw a sharp line between employees and members of the general public.' This line exists ... because 'the Workers' Compensation Act constitutes the full extent of an employer's liability for any injuries sustained by its employees ... in the course of their employment,' while commercial general liability policies are designed to protect against injuries caused to the public or the public's property."

242 S.W.3d at 721, *quoting Am. Family Mut. Ins. Co. v. Tickle*, 99 S.W.3d 25, 29 (Mo.App.2003) (internal citations omitted).[2]

As explained above, "temporary workers" are granted coverage under the commercial automobile liability policy at issue in this case, but under the workers' compensation act, "temporary workers" are not covered by their employers' workers' compensation insurance. Because the "temporary worker" clauses in the policy at issue here and the Missouri workers' compensation act are nearly identical and both require that a worker be "furnished" to an employer, they should be interpreted the same way.

Here, the majority's interpretation that a third party "furnishes" a worker to an employer by recommending or referring

1. In 1993, the year after Missouri and many other states adopted this distinction between "leased workers" and "temporary workers," the standard Insurance Services Office Inc. ("ISO") commercial liability policy, which forms the template used by insurers such as Hartford, was changed to include a distinction between "leased workers" and "temporary workers." *Tickle*, 99 S.W.3d at 30. The ISO's definition of a "temporary worker" is substantively identical to that in 20 CSR 500–6.800, stating, " 'Temporary worker' means a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." *Id.*

2. This dichotomy also explains why "leased workers" are excluded from coverage under commercial insurance policies such as the one at issue here while "temporary workers" are granted coverage. To prevent employers from avoiding their workers' compensation obligations by leasing employees technically working for third parties, Missouri's workers' compensation act was amended in 1992 to obligate employers to purchase workers' compensation insurance for employees obtained "through an employee leasing arrangement." § 287.282; *see also Tickle*, 99 S.W.3d at 29–30.

But the amendment specified that such arrangements "shall not include temporary help

service arrangements which assign their [own] employees to clients for a finite period of time to support or supplement the client's work force in special work situations, such as employee absences, temporary skill shortages and seasonal workloads...." § 287.282. Regulations promulgated under this provision define a "temporary worker" as a "worker who is furnished to an entity to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions." 20 CSR 500–6.800.

In other words, leased workers are covered by their employer's workers' compensation insurance; temporary workers are not. It avoids duplication of coverage, therefore, for commercial insurance policies to exclude leased employees but to provide coverage for "temporary workers" who otherwise would not have any coverage. *Tickle*, 99 S.W.3d at 29–30; *accord, Brown v. Ind. Ins. Co.*, 184 S.W.3d 528, 537 (Ky.2006) ("The reason the 'employee' exclusions apply to leased workers but not to temporary workers 'furnished to you' is that the lessee of a leased employee is required to provide workers' compensation insurance coverage for that employee, whereas a temporary worker remains the employee of the temporary help service that furnished the worker.").

him will allow Mrs. Mendenhall to recover under Hartford's policy. But under this interpretation, every part-time or seasonal worker who is recommended or referred to an employer will be excluded from that employer's workers' compensation insurance. As a result, the majority's opinion will limit the remedies available to thousands of part-time and seasonal workers who are injured on the job each year.

Based on the plain meaning of the word "furnish" and concerns about the interplay between "temporary worker" exceptions in commercial liability policies and workers' compensation acts, a number of courts also have concluded that a third party must have some ability to direct the actions of a person in order to "furnish" him or her to an employer. *Empire Fire & Marine Ins. Co. v. Jones*, 739 F.Supp.2d 746 (M.D.Penn.2010), provides a good example. In *Empire*, Michael Kalman and his wife employed the plaintiff to do part-time maintenance work and recommended him to their friend, Robert Jones. *Id.* at 749–50. Mr. Jones hired the plaintiff as a part-time worker, and the plaintiff later was hurt while working for Mr. Jones. *Id.* The plaintiff sued, alleging that he was a "temporary worker" of Mr. Jones as that term was used in Mr. Jones' business automobile liability policy because Mr. Kalman had "furnished" him to Mr. Jones by recommending him to the latter. *Id.* at 753–54.

As here, the dispositive issue in *Empire* was whether a third party's recommendation or referral of a prospective employee to an employer meant that the third party "furnished" the worker. *Empire* held that a referral did not constitute "furnishing" an employee, stating:

> [The Kalmans] gave Jones a referral to Drumheiser, and Jones contacted Drumheiser himself to set up the terms of Drumheiser's employment with Jones

... the Kalmans ultimately had no power to set the conditions of Drumheiser's employment with Jones, nor could they recall Drumheiser from that employment without his consent. Mr. Kalman's understandable desire to share the fruits of a person he considered to be an excellent part-time worker does not transform Drumheiser into a 'Temporary worker,' as set forth in the exclusion.

*Id.* at 754.

In *AMCO Ins. Co. v. Dorpinghaus*, No. 05–1296, 2007 WL 313280 (D.Minn. Jan. 12, 2007), two workers argued that they had been "furnished to" the defendant when their friend Tony asked if they could help him with a project he was doing for the defendant, the two contacted the defendant, and he hired them. *Id.* at *1. The district court rejected the argument that this referral constituted "furnishing" the two friends, stating that while they had learned of the job from Tony, they negotiated their employment directly with the defendant. *Id.* at *7. The court further found "Tony was not in the business of supplying workers to others ... [a]nd neither Richie nor Tommy had ever worked for Tony, making it difficult for Tony to furnish them to anyone." *Id.* In other words, the court found that a person cannot "supply" or "furnish" a worker to an employer when he has no authority over the worker.

Similarly, *Brown v. Ind. Ins. Co.*, 184 S.W.3d 528 (Ky.2005), held that two workers were not "furnished" to an employer when the record showed that one worker had been referred to the employer by a farmer, and the employer hired the other worker at the request of his parents. *Id.* at 538. *Brown* said neither the referral nor the request constituted "furnishing" an employee, and, therefore, the "temporary

worker" exception did not apply. *Id.* Other cases are in accord.[3]

In this case, as in those discussed above, the Family Center simply recommended Mr. Mendenhall to Mr. Walker as a potential hire, and three days later, Mr. Walker hired him for part-time work. The Family Center had no authority over Mr. Mendenhall. Mr. Mendenhall did not need permission from the Family Center to work for Mr. Walker, and Mr. Walker did not need approval from the Family Center to hire him. As a result, Mr. Mendenhall was not "furnished" to Mr. Walker by the Family Center; instead the Family Center merely "furnished" him with a recommendation for employment with Mr. Walker.

Because Mr. Mendenhall was not "furnished" to Mr. Walker, the trial court's grant of summary judgment to Hartford should be affirmed.

---

**3.** Other courts have used a similar analysis to reject arguments that one can furnish oneself or that the word "furnish" is ambiguous and might include something less than providing or supplying. *Northland Cas. Co. v. Meeks,* 540 F.3d 869 (8th Cir.2008), rejected arguments that one can furnish oneself and that the term "furnish" is ambiguous, instead holding that a third party must supply the employee to come within the definition of "temporary worker." *Id.* at 875–77. *Nationwide Mut. Ins. Co. v. Allen,* 83 Conn.App. 526, 850 A.2d 1047 (2004), held that because the employer did not go to an employment or leasing agency to employ the injured worker, and the worker "was not employed by anyone who lent or furnished him" to the employer, the worker was not "furnished" and, so, did not qualify as a temporary worker under the insurance policy in question. *Id.* at 1057. *See also Carl's Italian Rest. v. Truck Ins. Exch.,* 183 P.3d 636, 639 (Colo.App.2007) (one cannot "furnish" oneself); *Monticello Ins. Co. v. Dion,* 65 Mass.App.Ct. 46, 836 N.E.2d 1112, 1115 (2005) (one cannot "furnish" oneself); *Burlington Ins. Co. v. De Vesta,* 511 F.Supp.2d 231, 233 (D.Conn.2007) (third party must "furnish" worker).