GARY W. LYNCH, J.
Shelter Mutual Insurance Company ("Shelter") appeals a summary judgment declaring that under certain insurance policies it must indemnify Daniel Craig ("Insured") for $400,000 in damages sustained by Jennifer Lester and Abbigail Lester (referred to collectively as "the Lesters"). In two points, Shelter asserts that the judgment was erroneous because the policies unambiguously provide that Shelter's maximum liability is $100,000. Finding no merit in Shelter's points, we affirm.
Factual and Procedural Background [1]
While operating Jennifer Lester's 2003 Ford Expedition ("the motor vehicle"), Insured lost control and crashed ("the accident"). Jennifer Lester and her daughters, Abbigail Lester and Cerea Reed, were riding in the motor vehicle as passengers and, as a result of the accident, the Lesters sustained personal injuries and Cerea Reed lost her life.
At the time of the accident, the motor vehicle was insured under a policy issued by Cornerstone National Insurance Company ("Cornerstone"), providing liability limits in the amount of $25,000 per-person/$50,000 per-accident. Additionally, Insured's parents were the named insureds on four motor vehicles, each of which were insured by a separate Shelter insurance policy (referred to collectively as "the Shelter policies"). As relevant to the accident, the Shelter policies provided bodily injury liability coverage for "[r ]elatives " of the named insureds for claims arising from their use of a "non-owned auto " in the amounts of $50,000 per-person/$100,000 per-accident. Although the parties agreed that the Shelter policies applied to the accident, they disputed the combined maximum amount of liability coverage. Shelter claimed that the maximum amount was $100,000, while the Lesters claimed that the amount was not less than $200,000.
Thereafter, the Lesters pursued claims for their injuries and the wrongful death of Cerea Reed. The Lesters, Insured, Shelter, and Cornerstone thereafter entered into a settlement agreement pursuant to section 537.065 ("the agreement"). Under the agreement's terms, Cornerstone would pay the Lesters $50,000; Shelter would pay the Lesters $100,000; a $1,500,000 consent judgment would be entered against Insured *279 in favor of the Lesters (consisting of a $750,000 judgment for the wrongful death of Cerea Reed, a $461,250 judgment for the person injuries of Abbigail Lester, and a $288,750 judgment for the personal injuries to Jennifer Lester) (collectively "the Lester claims"), $150,000 of which would be satisfied by the payments from Cornerstone and Shelter ("the consent judgment"); the coverage dispute regarding the Shelter Policies would be litigated in a declaratory judgment action filed by Shelter; and any attempt to collect on the balance of the consent judgment would be limited to the extent Shelter remained liable under the Shelter policies.
Shelter thereafter filed the instant action seeking a declaratory judgment that $100,000 is "[t]he total amount of combined liability coverage available under [the] Shelter policies to indemnify [Insured.]" Shelter based its argument on a provision, "POLICY TERMS APPLICABLE TO MORE THAN ONE PART OF THE POLICY[,]" found in each of the Shelter policies, which provides, in pertinent part:
OTHER INSURANCE WITH SHELTER MUTUAL INSURANCE COMPANY OR SHELTER GENERAL INSURANCE COMPANY
If more than one policy issued by Shelter Mutual Insurance Company or Shelter General Insurance Company provides coverage for a single loss, this policy covers only the proportion of the total amount payable that its limits bear to the total limits of all such policies. The total maximum amount payable under all such policies is the highest limit of any one coverage applicable to the loss.
["the OSI clause"].
Cross-motions for summary judgment followed, and the trial court ultimately granted the Lesters' motion and denied Shelter's competing motion.[2] As relevant here, the trial court ruled that Shelter "failed to meet its burden of proving that the OSI [c]lause applies in this matter[,]" in that it did not show that there was "a single loss." Alternatively, the trial court ruled that the OSI clause is ambiguous on its face and in light of other provisions in the Shelter policies. The trial court ultimately entered summary judgment against Shelter for $300,000, having concluded that
the stipulated facts confirm that each Shelter policy provides a face amount of $50,000 per person/$100,000 per accident of coverage. Because Shelter has failed to show unambiguous policy language reducing or limiting the [Shelter] policies' stated coverage, all four of the policies combine for a total of 400,000 of coverage. Shelter has only paid $100,000.
Shelter timely appeals.
Applicable Principles of Review and Governing Law
"The interpretation of an insurance policy, and the determination whether coverage and exclusion provisions are ambiguous, are questions of law that this Court reviews de novo. " Burns v. Smith , 303 S.W.3d 505, 509 (Mo. banc 2010). "Where, as here, the trial court granted summary judgment, this Court also applies a de novo standard of review." Id. This means "we give no deference to the trial court's decision[,]" but rather "employ the same criteria the trial court should have used in deciding whether to grant the motion." Haulers Ins. Co., Inc. v. Pounds , 272 S.W.3d 902, 904 (Mo. App. 2008) (internal citations omitted).
*280 "An ambiguity exists when a phrase is 'reasonably open to different constructions.' " Mendenhall v. Prop. & Cas. Ins. Co. of Hartford , 375 S.W.3d 90, 92 (Mo. banc 2012) (quoting Burns , 303 S.W.3d at 509 ). "Courts should not interpret policy provisions in isolation but rather evaluate policies as a whole." Ritchie v. Allied Prop. & Cas. Ins. Co. , 307 S.W.3d 132, 135 (Mo. banc 2009). In construing the terms of an insurance policy, we apply "the meaning [that] would be attached by an ordinary person of average understanding if purchasing insurance[.]" Id. "To ascertain the common meaning of a term, a court may look to a dictionary definition." Strader v. Progressive Ins. , 230 S.W.3d 621, 624 (Mo. App. 2007). "A word with more than one dictionary meaning is not necessarily ambiguous if the court concludes that, in context, only one meaning that comports with the parties' objectively reasonable expectations is applicable." Id.
If the terms of the insurance policy are ambiguous, we resolve the ambiguity in favor of the insured. Mendenhall , 375 S.W.3d at 92. Where there is no ambiguity or violation of state or public policy, however, the contract will be enforced as written. Hempen v. State Farm Mut. Auto. Ins. Co. , 687 S.W.2d 894, 894 (Mo. banc 1985). "A court is not permitted to create an ambiguity or distort the language of an unambiguous policy in order to enforce a particular construction that it deems more appropriate." Progressive Nw. Ins. Co. v. Talbert , 407 S.W.3d 1, 9 (Mo. App. 2013) (quoting Lynch v. Shelter Mut. Ins. Co. , 325 S.W.3d 531, 535 (Mo. App. 2010) ) (internal quotation marks omitted).
Analysis
Shelter asserts two points relied on. Both contend that "[t]he trial court erred in entering summary judgment for the Lester[s] and in denying summary judgment for [ ]Shelter, because Shelter's total liability under all of the applicable policies is $100,000[.]" Specifically, Shelter argues that the OSI clause "unambiguously provide[s] that the total maximum amount payable under all such policies is the highest limit of any one coverage applicable to the loss, which is $100,000" (point 1); and, the OSI clause is "not made ambiguous by the policy declarations or any other policy provisions" (point 2).[3] Because Shelter's points are somewhat interrelated, we address them together.
The parties' dispute as to the applicability of the OSI clause focuses on the meaning of its initial phrase-"[i]f more than one policy issued by Shelter[ ] provides coverage for a single loss , ...." (Emphasis added). The parties do not dispute that the phrase's beginning "if" makes the operative provisions of the OSI clause applicable only when the condition or conditions prescribed in the rest of that phrase exist. Rather, the crux of the parties' dispute is about what condition or conditions are prescribed in the rest of the phrase so as to trigger the operative provisions of that clause.
*281 Shelter generally argues, without citation to the record or legal authority, that the OSI clause "can be characterized as a species of 'anti-stacking' language, in that it operates to limit the total amount of coverage, when more than one Shelter [policy] applies to a loss." Assuming the correctness of this general premise, Shelter then argues that "the trial court's narrow interpretation of the OSI [c]lause improperly neutralized the provision and is inconsistent with the policy's general intent." Shelter identifies the alleged narrow interpretation as focusing "almost exclusively on three (3) words within the clause: 'a single loss [,]' " defined as "one loss, i.e. one harm, one negative consequence or one amount of claim[.]"
Rather, Shelter contends that "[t]o a reasonable insured, 'single loss' could easily mean either a single injury-producing event or the total financial obligation he owes to the injured parties." (Emphasis added). In support of that contention, Shelter concedes that the word "loss" is not defined in its policies and relies on an on-line dictionary definition for "loss" as "the amount of an insured's financial detriment by death or damage that the insurer is liable for[.]" Definition of Loss by Merriam-Webster, http://www.merriam-webster.com/dictionary/loss (last accessed by Shelter on August 21, 2017 and last accessed by the court on January 29, 2018). Based upon this definition, without citation to any other source or authority, Shelter concludes that the "objectively reasonable meaning of the words 'single loss' when used in an insurance policy, would be the singular harm or negative consequence to the insured, occasion [sic] by the liability he incurs as a result of any death or damages caused by the accident."
In the alternative, Shelter contends that even if "the narrow interpretation" was proper, "then it would stand to reason that each individual claim should be subject to the limitations on coverage under the OSI [c]lause." This is so, Shelter argues, because "if the Lester claims are to be considered separate and distinct, then each such claim must therefore represent a "single loss" within the meaning of the OSI [c]lause" and "each of their claims would still be subject to the OSI [c]lause[.]" Shelter asserts that this is a "logical way ... to give effect to the policy terms" and "it would not have increased the amount of available coverage."
On the other hand, the Lesters assert that the first phrase of the OSI clause creates two specific conditions: "(1) [t]here must be more than one Shelter policy that provides coverage; and (2) there must be "a single loss" for which those policies provide coverage." Because the parties have stipulated that each of the four policies provides coverage, the Lesters contend that the only issue for the court's analysis is the second condition-"for a single loss." Because this phrase nor any of the words in this phrase are defined in the Shelter policies, the Lesters assert that Shelter left "its insured to speculate what Shelter meant by the term 'a single loss.' "
Relying upon an online dictionary, the Lesters contend that
The word "a" is an article and is "used before nouns and noun phrases that denote a single, but unspecified, person or thing." www.thefreedictionary.com. "Single" is an adjective that means "only one" in number or individual. www.thefreedictionary.com; www.dictionary.com. "Loss" is a noun and in the most general sense is a negative consequence, harm, destruction, undesirable outcome or even as asserted by Shelter, amount of claim. www.thefreedictionary.com; www.dictionary.com.
*282 Based upon these definitions, they argue that "for the OSI [c]lause to apply there must be one undesirable outcome, one harm, one negative consequence, one destruction or even one 'amount.' " Because "the undisputed facts show three separate undesirable outcomes, three separate harms, to three separate victims, resulting in three separate claims with three separate judgments/amounts[,]" rather than one, "the OSI [c]lause by its plain terms ... is not triggered."
We begin our analysis by observing that we do not need to determine the actual and precise meaning of the phrase "for a single loss" as used in the OSI clause. Rather, the issue before us is to determine whether that phrase is ambiguous-reasonably open to different constructions-when read by an ordinary person of average understanding if purchasing insurance. See Mendenhall , 375 S.W.3d at 92 ; Ritchie , 307 S.W.3d at 135. In this context, the reasonableness of the Lesters' proffered construction is our first area of inquiry and our determination that it is a reasonable construction is dispositive of this appeal.
The words "single" and "loss" used in the OSI clause are not defined in the policy and there is nothing in the OSI Clause that indicates either is used in any technical or special sense or other than in its ordinary meaning as generally understood by an ordinary person. We have not been directed to any other provision or provisions in the Shelter policies indicating otherwise.
In the noun phrase "a single loss," the word "a" is used as an indefinite article. According to the online dictionary cited by Shelter, in this context, "a" is "used as a function word before singular nouns when the referent is unspecified." Definition of A by Merriam-Webster, http://www.merriam-webster.com/dictionary/a (last accessed January 29, 2018). This use of "a" signals to the ordinary reader of average understanding that the noun "loss" is singular.
In this phrase, "single" is used as an adjective to modify the noun "loss." When used in this manner, the definition of "single" from the online dictionary espoused by Shelter is "consisting of one as opposed to or in contrast with many." Definition of Single by Merriam-Webster, http://www.merriam-webster.com/dictionary/single (last accessed January 29, 2018).[4] The assignment of this common and generally understood meaning by an ordinary person of average understanding purchasing insurance to the use of the word "single" in the OSI clause is reasonable.
As to "loss," the online dictionary relied upon by Shelter defines its noun use as "a person or thing or amount that is lost[.]" Definition of Loss by Merriam-Webster, http://www.merriam-webster.com/dictionary/loss (last accessed on January 29, 2018). Given this common and general definition, we cannot say that an ordinary person of average understanding purchasing insurance is unreasonable in concluding that the death of a person is one "loss" and the personal injury of another person is a different "loss," even if they arise out of the same accident. The reasonableness of this conclusion is buttressed by the example of the plural "losses" under this particular definition as "killed, wounded, or captured soldiers. His regiment suffered terrible losses." Id. In other words, a killed soldier is a loss, a wounded soldier is a loss, and the occurrence of both are "losses." It is further buttressed by the *283 descriptors "a" and "single" preceding the word "loss." These descriptors imply to the ordinary person of average understanding that a reference is being made to one singular loss from within a universe with the potential for multiple losses. To an ordinary person of average understanding purchasing liability insurance, the most likely candidate for that universe is an accident, as defined by the policy. That purchaser is seeking to protect his or her assets against not just a loss arising out of an accident, but rather all losses arising out of that accident. This leads to that purchaser's reasonable conclusion that the meaning of "loss," as used in the OSI clause, is narrower than and something less than all losses arising out of the accident, which supports the reasonableness of the conclusion that "loss" means the death or personal injury of a person.
That reasonable meaning for the word "loss" is modified in the OSI clause by the adjective "single." When so modified using the previously discussed reasonable meaning of "single," supra , an ordinary person of average understanding purchasing insurance could reasonably conclude that "a single loss" consists of one loss as opposed to or in contrast with many losses. Or stated on the most granular basis, "a single loss" consists of one person's death or personal injury as opposed to and in contrast with many persons' deaths or personal injuries. This yields the logical and reasonable construction that the OSI clause is triggered when more than one Shelter policy provides coverage for one person's death or personal injury, but is not triggered when more than one Shelter policy provides coverage for more than one person's death or personal injury.[5]
The reasonableness of this construction is additionally supported by the reasonable and logical expectations of an ordinary person of average understanding purchasing liability insurance to protect his or her assets in the event of an accident. While that purchaser could readily comprehend and understand the expressed condition of limiting the amount of coverage of multiple policies for a single loss to the highest limit of a single policy, that purchaser would reasonably and logically expect that such an explicit limitation would not implicitly apply to multiple losses covered by multiple policies. This is so because the purchaser's general expectation that the purchase of multiple liability policies should provide more liability protection for more losses is also reasonable and logical.
In finding that the Lesters' proffered construction of the OSI clause is reasonable, we need not consider whether any other constructions, as Shelter suggests, "could easily" be found to be reasonable. Similarly, because we view the language of the policy through the eyes of an ordinary person of average understanding purchasing insurance, Shelter's intended purpose for the OSI clause is irrelevant to our inquiry.
Based on the foregoing, the inexorable conclusion is that "a single loss" as used in the triggering phrase of the OSI clause is, at a minimum, reasonably open to different constructions and is, therefore, ambiguous. See Mendenhall , 375 S.W.3d at 92. As such, we must resolve the ambiguity in favor of Insured. See id. So construed, we conclude that the OSI clause was not triggered under the facts here and does not apply to limit the coverage of the Shelter policies.
*284 Accordingly, Shelter's first point is denied. Its second point is moot to the extent it argues that other provisions of the Shelter policies do not create ambiguities when read in conjunction with the OSI clause. To the extent that Shelter's second point argues that the OSI clause is not ambiguous on its face, it is without merit and is also denied.
Decision
The trial court's judgment is affirmed.
MARY W. SHEFFIELD, P.J.-concurs
DON E. BURRELL, JR., J.-concurs

The facts are derived from the parties' joint stipulation of undisputed facts filed with their cross-motions for summary judgment.

Insured joined in the Lesters' motion for summary judgment and their response to Shelter's competing motion.

The Lesters argue that Shelter's points relied on violate Rule 84.04 because they fail to explain why, in the context of this case, the legal reasons provided support Shelter's claim of reversible error. While Shelter's points may not be models of clarity, we disagree with the Lesters' Rule 84.04 argument. Shelter's points do, however, violate Rule 84.04 for a different reason. They are multifarious in that they challenge two separate rulings-trial court's grant of the Lesters' summary judgment motion, and its denial of Shelter's competing motion. Nonetheless, because this infirmity does not impede review, we exercise our discretion to review the points ex gratia. See Bolt v. Giordano , 310 S.W.3d 237, 242 (Mo. App. 2010). All rule references are to Missouri Court Rules (2017).

Shelter does not suggest or assign a definition for "single" in either its initial or reply brief.

This construction gives meaning to every word, Gulf Ins. Co. v. Noble Broad. , 936 S.W.2d 810, 814 (Mo. banc 1997), and defeats Shelter's alternative argument that each of the Lesters' claims represent a "single loss" within the meaning of the OSI clause.